Reese, Appellant, *v.* Philadelphia Trust, Safe Deposit & Insurance Company.

*Gift—Gift inter vivos—Intention—Delivery.*

To constitute a valid gift inter vivos two essential elements must combine, an intention to make the gift then and there, and such an actual constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith.

An elderly woman accompanied by her nephew went to the vaults of a trust company, took out her box containing her securities, called in an officer of the company to whom she declared her purpose to make a gift of the securities to her nephew, asked the officer to witness the transaction, executed blank transfers prepared at that time, and thereupon placed the securities in a box rented by the nephew, surrendering her own box. The nephew about to go to a distant state appointed the aunt as his deputy to have access at all times to the box. *Held,* (1) that a valid gift of the securities is to be derived from the transaction; (2) that the fact that the aunt subsequently exercised a certain control over the securities—except as otherwise explained—will be

referred to her agency in connection therewith; (3) that even if it were otherwise, such fact could not be allowed to overcome the plain and necessary inference to be derived from the transaction itself, except as knowledge of it be traced to the donee, and such acquiescence on his part be shown as would warrant an inference that in the mutual understanding of the parties that by the transaction something less than an absolute gift was intended.

Argued March 27, 1907.   Appeal, No. 382, Jan. T., 1906, by plaintiff, from decree of C. P. No. 5, Phila. Co., Sept. T., 1905, No. 1,270, dismissing bill in equity in case of William K. Reese v. The Philadelphia Trust, Safe Deposit & Insurance Co., Executors of the Will of Anna K. Pomeroy, deceased, et al.   Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART JJ.   Reversed.

Bill in equity to secure the transfer of securities.
MARTIN, P. J., found the facts to be as follows:
William K. Reese, the complainant, is the nephew of Anna K. Pomeroy, a widow without children of her own, who died August 25, 1905, between the age of sixty-five and seventy years.   The relations of William K. Reese to his aunt were very affectionate.   He was treated by her as a son from childhood.   He and his sisters were her nearest relatives, and he was a member of her household.

She kept securities belonging to her estate in a safe deposit box in the vault of the Philadelphia Trust Company.   The plaintiff was designated by her upon the books of the company as a deputy to visit the box in her absence.

On August 1, 1904, Mrs. Pomeroy and her nephew went to the vault, her deposit box was taken into a room, and an officer of the company sent for by her.   When he entered, Mrs. Pomeroy and Mr. Reese were seated at the table upon which the box stood open.   Some of the securities were lying on the table, others remained in the box.   She said she was giving Mr. Reese the box and its contents and that she wished the official to act as a witness.   He informed her that powers of attorney should be executed to transfer registered securities.   At her request a clerk was sent into the room with powers printed in blank to effect transfers.   A power to transfer five seven per cent. first mortgage bonds of the Philadel-

phia & Reading Railroad Company, for $1,000 each, registered in the name of Anna K. Pomeroy, was executed by her and witnessed by the clerk. Powers were signed by her on the back of two certificates for three and twenty shares each of the capital stock of the Philadelphia & Reading Railroad Company, standing in her name upon the books of the company and duly witnessed; and powers upon the back of three certificates for three, four and thirty-one shares respectively of the capital stock of the Lehigh Coal & Navigation Company, were executed by her and witnessed in the same way.

No transfer of these securities was actually made upon the books of the companies.

On the same day the box in which they had been kept by her was surrendered, a new box rented from the trust company by William K. Reese, and he delegated Mrs. Pomeroy as his deputy to have access to this box. She availed herself of the privilege upon several occasions, detached coupons from bonds, collected income and deposited the money in her individual account. During her absence from the city at a time when Mr. Reese was residing in California she executed a letter of attorney authorizing the trust company to act for her. The money collected under this authority by the company was paid to her or deposited in her individual account. The securities were at this time still registered in her name and the trust company, acting by virtue of her authorization to it, collected the income accruing upon them. After her death William K. Reese presented the certificates with the powers of attorney at the offices of the companies and demanded transfers into his own name, which were refused. A bill in equity was filed by him setting forth the facts, alleging a gift of the securities by Mrs. Pomeroy to him and praying for a mandatory injunction to compel the Philadelphia & Reading Railroad Company, the Lehigh Coal & Navigation Company and the Pennsylvania Railroad Company to transfer to him the shares of stock issued by them respectively, standing upon their books in the name of Anna K. Pomeroy; for a decree compelling the Philadelphia Trust, Safe Deposit and Insurance Company as executors of the will of Anna K. Pomeroy, deceased, to execute as executors powers of attorney to effect a transfer of the securities to complainant and for

a decree that the testimony taken in support of the allegations of the bill be made a matter of record and remain in perpetuam rei memoriam.

Kate R. Tevis and Mary E. Baker, the sisters of William K. Reese, were allowed to intervene as parties in the suit. Answers were filed in which the former denied that Mrs. Pomeroy intended to make a gift of the securities to plaintiff, and the latter demanded proof of his title. The Philadelphia Trust, Safe Deposit and Insurance Company set out that they were executors of Mrs. Pomeroy's will, stated in detail the circumstances attending the gift of the securities and submitted themselves to the court. The other defendants submitted themselves to the court in the premises.

The auditing judge recommended a decree in favor of the plaintiff.

Exceptions to the adjudication were sustained in an opinion by RALSTON, J.; and a decree was entered dismissing the bill.

*Error assigned* was the decree of the court.

*William W. Porter* and *John G. Johnson,* for appellant.— The delivery of a bond, certificate of stock or note to the donee, with the intention of transferring to him the right of property, is sufficient to constitute a gift: Hani v. Insurance Co., 197 Pa. 276 ; Commonwealth v. Crompton, 137 Pa. 138 ; Madeira's Appeal, 17 W. N. C. 202 ; Pryor v. Morgan, 170 Pa. 568 ; Wise's Estate, 182 Pa. 168 ; Malone's Estate, 8 W. N. C. 179 ; Mothes's Estate, 29 Pa. Superior Ct. 462; Wendt's Estate, 14 Pa. Superior Ct. 640 ; Bond v. Bunting, 78 Pa. 210 ; Riegel v. Wooley, 81* Pa. 227 ; Hess v. Brown, 111 Pa. 124 ; Funston v. Twining, 202 Pa. 88 ; Parker's Estate, 34 W. N. C. 376.

*Henry Budd,* with him *Peter Boyd, Henry B. Hodge,* and *R. L. Ashhurst,* for the Philadelphia Trust Co., appellee.—To make valid gifts there must have been, not only an intention to make them, but to do so at the time and not in the future, attended by an actual or constructive delivery to the donees, by which the donor released all dominion over the funds and invested the donees with the full title to and control over the same :

Basket v. Hassell, 107 U. S. 602 (2 Sup. Ct. Repr. 415); Com. v. Crompton, 137 Pa. 138; Clapper v. Frederick, 199 Pa. 609.

But gifts inter vivos have no reference to the future. They take immediate and absolute effect. A gift to take effect in futuro is void: Withers v. Weaver, 10 Pa. 391; Flanagan v. Nash, 185 Pa. 41; Williams's App., 106 Pa. 116; Scott v. Lauman, 104 Pa. 593; Stockham's Estate, 19 Pa. C. C. Rep. 369; Tygard v. McComb, 54 Mo. App. 85; Hafer v. McKelvey, 23 Pa. Superior Ct. 202.

*Henry Budd*, with him *Peter Boyd*, for Kate R. Tevis and Mary E. Baker, appellees.

OPINION BY MR. JUSTICE STEWART, May 6, 1907:

If the legal effect and consequence of the transaction between Mrs. Pomeroy and her nephew, William K. Reese, the appellant, are at all obscure, it is not because the transaction itself in any of its features is uncertain or equivocal. It is claimed that what subsequently occurred between the parties shows a purpose in the mind of Mrs. Pomeroy the very opposite of that indicated by the transaction, and a corresponding understanding by the nephew. The learned judge before whom the case was heard derived from the transaction a valid and effective gift of the securities in question. He was overruled in this by the court in banc, and this appeal results. The facts are undisputed, and may be briefly stated.

Mrs. Anna K. Pomeroy was a widow of advanced age and childless. Her nearest kindred were the appellant, a nephew and his three sisters, two of whom are among the appellees. For the appellant, who had resided with her from childhood, she entertained special affection, treating him as a son. On August 1, 1904, the aunt and nephew together went to the Philadelphia Trust, Safe Deposit & Insurance Company, where the former had a rented safe or box in which she kept certain securities. While they were together in the room of the directors of the company she took out the box, and having placed it on a table called into the room Mr. Scholey, an officer of the company. She told Mr. Scholey that she was giving to her nephew the box and contents, and that she wished him to witness the gift. She was then seated at the table where the

box was ; some of the securities were still in the box, while others were out upon the table. Mr. Scholey examined the securities sufficiently to see their general character, and told Mrs. Pomeroy that inasmuch as some were registered and some were coupon bonds, something more was necessary to complete the gift, and inquired whether he should send someone in to prepare powers of attorney for her to execute. He accordingly sent into the room Mr. Pierce, a clerk in the bank, with blank powers of attorney which were there signed by Mrs. Pomeroy and witnessed by Pierce. Among the securities were the certificates and bonds which are the subject of the present controversy. These were (1) two stock certificates issued by the Pennsylvania Railroad Company, one for twenty and one for three shares ; (2) three stock certificates issued by the Lehigh Coal & Navigation Company, one for three, one for four and one for thirty-one shares, and (3) five mortgaged bonds of the Philadelphia & Reading Railroad Company, each of the denomination of $1,000. Assignments of these several securities in blank, with like blank powers of attorney empowering the attorney to sell, assign and transfer the same for assignee's use, were then and there signed by Mrs. Pomeroy and duly attested. These assignments were in the usual form, and had the effect to make the securities marketable without anything further. This being done, the box from which the securities had been produced, being Mrs. Pomeroy's, was surrendered, and the securities were placed in a box or safe that had been that day rented by the nephew. The latter being about to return to California, as part of the same transaction, constituted in writing on the records of the trust company Mrs. Pomeroy, as his deputy, with authority expressed as follows : " To have access to my safe at all times, with the same powers that I could have if personally present." This ended the transaction. None of the securities were transferred on the books of the company, but with the powers of attorney executed as above Reese was in position to have this done at any time before the death of Mrs. Pomeroy, which occurred August 25, 1905. After Mrs. Pomeroy's death, appellant presented the above-mentioned securities, with the powers of attorney attached, to the several companies that had issued them, and requested transfers to be made. This was declined because

of Mrs. Pomeroy's death. He then demanded of the executors that they execute new transfers. This demand being refused, he filed the bill in the present proceeding to require the executors to make the necessary transfers. The proceeding resulted in the dismissal of plaintiff's bill. This brief statement discloses the one question in the case—can a valid, effective, irrevocable gift of these particular securities to the nephew be derived from what took place between Mrs. Pomeroy and the appellant on the occasion referred to?

To constitute a valid gift inter vivos two essential elements must combine: an intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith. We do not understand that the sufficiency of the delivery of these securities to the donee, if an immediate and irrevocable gift was intended, is questioned. They were placed, if not by the hands of the donor, by one she directed, in the box of the donee, which, notwithstanding the donor thereafter had access to it, was the donee's own exclusive property for the time being, which neither the donor nor anyone else could interfere with except as allowed by him. This delivery was quite as unequivocal and pronounced as it would have been had the securities been placed in the donee's hand or pocket, and therefore just as effective. With respect to the donor's intention as to the kind and measure of the gift she intended to make, if regard be had to her previous expression of purpose, to what passed between the parties, and what occurred at the time of the making of the gift, and to these alone, there can be but one conclusion. What was there done, whatever its effect, was in fulfillment of a purpose the donor had previously expressed to several of her intimate friends. She had again and again avowed her purpose to turn over to her nephew the securities in her box. Her purpose as expressed to Mr. Scholey, whom she had called in to witness the transaction, was to make a gift to her nephew of the contents of the box. The testimony of this witness was: "She said she was giving Mr. Reese the box and its contents, and would like me to act as a witness to the gift." In nothing that was said or done was there a suggestion of any qualification or restriction with respect to the gift. What

therefore occurred on the occasion while both parties were
present, is not only consistent with a purpose to make an im-
mediate and irrevocable gift, but inconsistent with any other.
When her attention was called to what was necessary to make
the gift effective, that is to say, powers of attorney to transfer
the securities, she immediately executed them.   The surrender
of her own box to the trust company, and the placing of the
securities made marketable by her blank transfers in the box
rented by the nephew, which immediately followed, completed
the transaction.   Confining the inquiry to the immediate oc-
currence, can there be any question as to the legal effect of
the transaction?   There is present in the case a clearly ex-
pressed purpose to make a present gift, followed by a sufficient
delivery.   Thus every requirement is met, and were we to
stop the inquiry here, the gift would have to be sustained.   It
was because the court below extended the inquiry, and allowed
what subsequently occurred to overcome the plain and obvious
intendment of what was said and done when the gift was made,
that a conclusion adverse to the plaintiff was reached.   The
evidence on this branch of the case was admitted for the pur-
pose of showing that the parties themselves understood the
transaction as meaning something different from that indicated
by the plain and natural meaning of their words and acts at
the time.   It is perfectly competent to show this, since the
effort of the law always is to develop and give effect to the
real purpose of the parties; but too great latitude was here
allowed, and evidence was introduced which in no aspect can
be considered as indicating a common and mutual understand-
ing and purpose, but simply a purpose by the donor inconsist-
ent with the facts of the transaction.   It is never permitted a
donor to impeach his gift; therefore what was said or done
by Mrs. Pomeroy, unassociated with her donee and unassented
to by him, is wholly irrelevant to the issue and cannot be con-
sidered.   The court below placed much emphasis on the fact
that Mrs. Pomeroy had at a later period inquired of an officer
of the bank whether the power of attorney she had given
" would put matters in proper shape so that if anything should
happen to her Mr. Reese could transfer the securities."   This
inquiry may reflect some light on her understanding of the
effect of the original transaction; but on its face the transac-

tion was an executed gift in the donee, and it is wholly immaterial, limiting this inquiry to what is pertinent to the issue, what either thought in regard to it, except as the other is shown to have had the same understanding.   The only relevant evidence on this branch of the case was that which related to the conduct of the parties with reference to the subject-matter.   True, this was confined principally to the acts of Mrs. Pomeroy, but since these extended to at least a qualified control of the securities, and the actual conversion of a part, the knowledge and assent of the donee might be inferred in connection therewith.   Immediately following the transfer of the securities the nephew returned to California.   Mrs. Pomeroy, who had been deputized by him to have access to the safe, remained until November 10 of the same year, when she too went to California.   Before removing she took from the safe Reading bonds to the amount of $3,000 and sold them.   She also collected certain coupons, and left authority with the trust company to collect others as they matured, the proceeds to be credited on her account.   After she had removed to California, she instructed the company to subscribe for an allotment of four shares of Lehigh Coal & Navigation stock.   On her return to Philadelphia in June, 1905, the authority she had given to the trust company was canceled.   To allow this evidence the effect contended for, too much would have to be supplied ; as it stands, it is wholly inadequate to the purpose. The selling of the $3,000 of bonds may very well have been within the implied power of the deputization, or in consequence of direct instructions from the principal.   The burden in such case is upon the party setting up the fact relied upon to overcome the natural and obvious meaning of the transaction.   This burden was not discharged so long as what Mrs. Pomeroy did with the proceeds of the sale of the bonds was left unexplained. She was a deputy in custody of the securities, and the presumption is that if she converted any of them, it was in the course of her agency, and that she fully accounted for them.   The law will not presume the contrary.   As much may be said with respect to the coupons and dividends collected by her and carried to her credit in the bank.   Giving these facts the utmost significance that can be claimed for them by the appellees, they are at least equivocal ; if they may be regarded

as indicating a continued ownership of the securities in Mrs. Pomeroy, with quite equal reason they may be referred to the agency she was invested. To allow such uncertain and ambiguous circumstances to defeat what the conduct of the parties in connection with the immediate transaction shows to have been intended as an absolute gift, is to misapprehend the true force and significance of the evidence.

The decree of the court below is reversed ; the plaintiff's bill is reinstated, and it is now ordered that a decree be entered directing an injunction mandatory in form to the Philadelphia Trust, Safe Deposit & Insurance Company, executor of the will of Anna K. Pomeroy, deceased, requiring it to sign as such executor such powers of attorney as may be required to transfer to William K. Reese the said recited securities. The cost of this proceeding to be paid by the executor of the will of Anna K. Pomeroy, deceased.