**In re FOUNDATION FOR ANGLICAN CHRISTIAN TRADITION, a corporation.**

**Appeal of: David W. Rawson.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2014.

Decided Nov. 5, 2014.

426

Paul B. Bartle, Christopher M. Curci and Walter H. Flamm, Jr., Blue Bell, for appellant.

Obadiah G. English, King of Prussia, for appellee Foundation for Anglican Christian Tradition.

Dean R. Phillips, Blue Bell, for appellee The Church of the Good Shepherd.

Claudia M. Tesoro, Senior Deputy Attorney General, Philadelphia, for appellee Commonwealth of Pennsylvania.

BEFORE: DAN PELLEGRINI, President Judge, BERNARD L. McGINLEY, Judge, BONNIE BRIGANCE LEADBETTER, Judge, RENÉE COHN JUBELIRER, Judge, MARY HANNAH LEAVITT, Judge, P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

David W. Rawson (Rawson) appeals from an order of the Court of Common Pleas of Montgomery County's Orphans' Court Division (trial court) sustaining the preliminary objections filed by the Foundation for Anglican Christian Tradition (Foundation) and the Church of the Good Shepherd (Church) and dismissing Rawson's *"amended petition for citation to show cause why the Foundation ... and the Church ... should not be enjoined from using charitable gift "* (amended petition) seeking declaratory and injunctive relief. Finding no error, we affirm.

I.

Rawson's amended petition alleges that he personally donated funds to the Foundation, a Pennsylvania non-profit corporation, and assisted it in raising additional funds "for the purpose of supporting Biblical and traditional Anglican Christian principles at [the Church]." (Am. Pet. ¶ 6; Reproduced Record [R.R.] at 16a.) Foundation funds were used to purchase real property adjoining the Church in 2000 in

exchange for a note and mortgage on the property.[1]

According to the amended petition, Rawson subsequently demanded that the note be amended to "guarantee that [the Church] would continue to follow the precepts of [the Foundation] and the direction of [Rawson]," thereby effectuating the intent of his donation. (Am. Pet. ¶ 10; R.R. at 16a.) Specifically, Rawson alleged that the amendment sought to objectively measure whether the Church continued to follow the Foundation's principles without engaging in ecclesiastical debate, and stated: "The Church shall be in default under the Note and Mortgage if a majority of the members of the Church's vestry are removed and replaced with new members, except for removal and replacement as a result of the annual elections pursuant to the Church's bylaws." (Am. Pet. ¶ 10; Am. Pet. Ex. B; R.R. at 16a–17a, 27a.) In the event that the default provision was triggered, the Foundation had the option of demanding the unpaid balance and interest immediately.

The amended petition goes on to state that after the note was amended, a majority of the vestry's members were removed and replaced with new members outside of the annual elections. Rawson alleges that around the same time, the Church decided to put the subject property up for sale and that to avoid losing the property pursuant to the default provision, vestry and Foundation members entered into a conspiracy.

Ultimately, the Foundation's Board of Directors (Board) met and voted unanimously to declare the mortgage null and void, and the Foundation filed a satisfaction of mortgage without receiving any payment of principal or interest.[2] The amended petition alleges that the Church subsequently entered an agreement to sell the subject property with regard to which Rawson sought declaratory and injunctive relief against the Foundation and Church.

## II.

The Foundation and the Church filed preliminary objections contending that Rawson failed to allege the creation of a charitable trust and that even if one was alleged, he lacked standing to enforce it.[3] The trial court sustained both sets of preliminary objections and dismissed Rawson's amended petition with prejudice, finding that Rawson lacked standing because he did not have the requisite special interest. Specifically, the trial court explained:

[Rawson]'s donations to and fundraising for [the Foundation] did not empower him to challenge [the Foundation]'s corporate decisions. He did not allege that he was a board member or officer of [the Foundation] at the time of the actions about which he complains. His being a "proponent of Biblical and traditional Anglican Christian principles" did not provide him with the requisite spe-

---

1. The note executed by the Church promises to repay the Foundation and states, "[I]f the Church shall fail to perform any other provision hereof on the part of the Church to be performed, then the balance of the debt evidenced by this Note ... shall at the option of the holder hereof, become and be due and payable immediately without notice to the Church." (R.R. at 28a.)

2. The amended petition avers that the meeting at which the vote took place "was engi-

neered and scheduled in a fashion as to exclude, as a practical matter, those directors who would have voted against the proposal." (Am. Pet. ¶ 17; R.R. at 18a.)

3. In its capacity as *parens patriae*, the Commonwealth of Pennsylvania, through its Attorney General, participated in oral argument at the trial court and participates in the instant appeal.

cial interest any more than being the author of a book about The Barnes Foundation gave an individual the right to participate in litigation involving that institution [in *In re Barnes Foundation*, 74 A.3d 129 (Pa.Super.2013), *appeal denied*, 622 Pa. 754, 80 A.3d 774 (2013), *cert. denied*, —— U.S. ——, 134 S.Ct. 2301, 189 L.Ed.2d 175 (2014)].

(Trial Court Opinion at 5–6 (footnote omitted).) The trial court distinguished between the settlor of a charitable trust that has standing to enforce the trust and the donor of a charitable gift that lacks standing and determined that "there was no reference to a trust[4] in this petition, and we perceive this allegedly debatable issue to be no more than a makeweight argument." (*Id.* at 6.) Footnote 4 further explained, "The amended petition speaks only the language of gifts with words and phrases, such as 'personally donated' (¶ 6), 'contribution' (¶ 7), 'donor' (¶ 10), and 'charitable gifts' (¶¶ 18, 24.)" (*Id.* at 6 & n.4.) This appeal followed.[4]

### III.

On appeal, Rawson asserts that the trial court erred in finding that he lacked standing because, as either the settlor of a charitable trust or as the donor of a charitable gift, he may enforce the conditions placed on his donation. He further contends that the trial court erred in determining that his charitable funds constituted a gift rather than a trust, based solely on the pleadings.

### A.

■ At the outset, we address the question of whether Rawson's amended petition

has alleged the existence of a charitable trust. While conceding that his amended petition does not reference the word "trust" but instead refers to his donation as a "gift," Rawson argues that the absence of this "magic word" is not fatal, as the relevant analysis in determining whether a trust was established concerns the powers and duties conferred. *See Buchanan v. Brentwood Federal Savings & Loan Association*, 457 Pa. 135, 320 A.2d 117, 122–23 (1974).

This Court has defined a "trust" as "a legal instrument created by one person or entity (the 'settlor') purporting to transfer property (the 'trust res' or 'trust property') to another person or entity (the 'trustee') to hold in trust for the benefit of another (the 'beneficiary')." *In re Milton Hershey School*, 867 A.2d 674, 681 (Pa.Cmwlth. 2005), *rev'd on other grounds*, 590 Pa. 35, 911 A.2d 1258 (2006).

Pursuant to the Uniform Trust Act (Act):[5]

A trust may be created by:

(1) transfer of property under a written instrument to another person as trustee during the settlor's lifetime or by will or other written disposition taking effect upon the settlor's death;

(2) written declaration, signed by or on behalf and at the direction of the owner of property as required by section 7732 (relating to requirements for creation—[Act] 402), that the owner holds identifiable property as trustee; or

(3) written exercise of a power of appointment in favor of a trustee.

---

4. Rawson filed his appeal in the Superior Court, which transferred the appeal to this Court by order dated November 1, 2013. We review a trial court's order sustaining preliminary objections and dismissing a complaint for lack of standing *de novo*, and our scope of review is plenary. *McConville v. City of Philadelphia*, 80 A.3d 836, 842 (Pa.Cmwlth.2013). We must accept as true all well-pleaded facts set forth in the pleading and any reasonable inferences deducible therefrom. *Id.*

5. 20 Pa.C.S. §§ 7701–7799.3.

Section 7731(1)–(3) of the Act, 20 Pa.C.S. § 7731(1)-(3). Under the Act, a trust may be created only if "the settlor signs a writing that indicates an intention to create the trust and contains provisions of the trust." Section 7732(a)(2) of the Act, 20 Pa.C.S. § 7732(a)(2). Indeed, "[o]ral trusts are unenforceable in this Commonwealth." Section 7737 of the Act, 20 Pa. C.S. § 7737.

Although the Act was not in effect at the time Rawson made his donation to the Foundation and we are without knowledge whether it was in effect at the time the note was amended,[6] even the common law predating the Act required "clear and unambiguous language or conduct indicating that the settlor intended to create a trust." *See In re Church of St. James the Less,* 585 Pa. 428, 888 A.2d 795, 806 (2005). In other words, a trust "cannot arise from loose statements admitting possible inferences consistent with other relationships." *Bair v. Snyder County State Bank,* 314 Pa. 85, 171 A. 274, 275 (1934). Regardless of whether a written instrument was required, we find that Rawson has failed to allege "clear and unambiguous language or conduct" indicating that he intended to create a trust.

As the trial court duly noted, the amended petition does not so much as mention a "trust," but rather, "speaks only the language of gifts." (Trial Court Opinion at 6 & n.4.) Specifically, the amended petition alleges that Rawson "personally donated" and assisted in raising funds for the Foundation (Am. Pet. ¶ 5; R.R. at 3a), that the note was amended to ensure that the Church continued to follow the Foundation's precepts, that Rawson has a special interest in enforcing the conditions set forth in the amended note "as the donor of the charitable gift and proponent of Biblical and traditional Anglican Christian principles" (Am. Pet. ¶ 11; R.R. at 4a), and that the Foundation's Board's vote "frustrate[d] the purpose of [Rawson]'s charitable gift" and "negate[d] the control that [Rawson] had required as a condition of the gift." (Am. Pet. ¶ 14; R.R. at 4a.)

■ The only language or conduct which Rawson asserts evidences his intent to create a trust is his delivery of the funds themselves, his advocacy for "Biblical and traditional Anglican Christian principles," the language of the original note, his post-donation insistence that an amendment be executed, and the language of the amendment. Neither the note nor the amendment references Rawson or confers upon him any rights or duties. They do not mention his donation and certainly do not render his donation, *post hoc,* dependent upon the Foundation's election to declare the Church in default. Likewise, none of the conduct referenced by Rawson evidences his intent to create a trust as opposed to a charitable gift. *See Bair,* 171 A. at 275 ("[A trust] cannot arise from loose statements admitting possible inferences consistent with other relationships."). Therefore, Rawson has failed to allege the existence of a trust under both Section 7732(a)(2) of the Act, 20 Pa.C.S. § 7732(a)(2), and the common law predating the Act. Further, because it was Rawson's duty to allege all of the elements of a charitable trust in his pleading, the trial court did not err in making this determination based upon the face of his amended petition without first ordering discovery.

---

6. Rawson asserts for the first time in his reply brief that he created an oral trust in 2000. (Reply Br. for Appellant to Br. for Appellee Commonwealth of Pennsylvania at 7.) However, arguments in briefs do not constitute factual averments which we are required to deem true for the purposes of resolving preliminary objections. *See Erie Indemnity Co. v. Coal Operators Casualty Co.,* 441 Pa. 261, 272 A.2d 465, 466–67 (1971).

## B.

Nonetheless, Rawson contends that even if he is only the donor of a charitable gift, he still has standing to enforce the conditions placed on the gift.

### 1.

Although this is an issue of first impression in the Commonwealth, the common law regarding standing is well settled:

> The core concept of standing is that "a party who is not negatively affected by the matter he seeks to challenge is not aggrieved, and thus, has no right to obtain judicial resolution of his challenge." *City of Philadelphia v. Commonwealth* [575 Pa. 542], 838 A.2d 566, 577 (Pa.2003). A litigant is aggrieved when he can show a substantial, direct, and immediate interest in the outcome of the litigation. *William Penn Parking Garage, Inc.* [*v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 280 (1975)]. A litigant possesses a substantial interest if there is a discernable adverse effect to an interest other than that of the general citizenry. *Id.* at 282. It is direct if there is harm to that interest. *Id.* It is immediate if it is not a remote consequence of a judgment. *Id.* at 283.

*In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261–62 (2006).

In the instant case, Rawson's status as a donor is insufficient to confer on him authority to enforce the Board's option to declare a default. As the trial court noted, Rawson is neither a Board member nor an officer of the Foundation. His belief in "Biblical and traditional Anglican Christian principles" does not provide him with a specialized interest different from other members of the citizenry.

Moreover, the terms of the amendment do not so much as mention Rawson but rather set forth an additional circumstance under which the Foundation may declare the Church in default. As made clear under the original note, the only parties to the note and mortgage are the Foundation and the Church; Rawson is not a party and the option to declare a default belongs to the Foundation as the holder of the note and mortgage.

Further, the fact that he made a gift to the Foundation is insufficient to confer standing upon him to enforce conditions on the gift where no conditions have been shown to exist. Generally, inter vivos gifts are irrevocable. *In re Sivak's Estate,* 409 Pa. 261, 185 A.2d 778, 781 (1962). When asserting that an inter vivos gift was conditional, the donor bears the burden of establishing the same. *In re Yeager's Estate,* 273 Pa. 359, 117 A. 67, 68 (1922).

While Rawson has alleged that his donation to the Foundation was conditioned upon the terms of the amended note, this conclusion contradicts the amendment, itself and the other facts Rawson averred. *See Baravordeh v. Borough Council of Prospect Park,* 699 A.2d 789, 791 (Pa. Cmwlth.1997) (explaining that when there is a contradiction between a pleading's averments and exhibits, the latter control, and the contradicted averments are not admitted for purposes of resolving preliminary objections), *appeal denied,* 555 Pa. 733, 725 A.2d 183 (1998). Indeed, the amendment was executed on an unspecified date *after* Rawson's donation was made and *after* the note and mortgage were executed. Therefore, any conditions imposed by the amendment were not contemporaneous conditions of the gift.[7]

---

7. In support of Rawson's argument that we should adopt a rule enabling donors of gifts, like settlors of trusts, to enforce the terms of a gift, he cites cases from California, Louisi-

Because Rawson has failed to set forth any factual averments from which it can be inferred that his gift was conditioned at the time it was made upon the Foundation exercising its authority under the amendment, his gift is assumed to be irrevocable and, as such, he lacks standing to enforce any *post-hoc* conditions.[8]

### 2.

■ Still, Rawson argues that our common-law standing doctrine has been superseded by the Act, which he urges us to follow in determining whether donors of charitable gifts have standing. The Act, however, applies only to charitable trusts and not to charitable gifts. *See* Section 7702 of the Act, 20 Pa.C.S. § 7702 ("This chapter applies to express trusts, charitable and noncharitable, and trusts created pursuant to a statute, judgment or decree that requires the trust to be administered in the manner of an express trust."). Moreover, because the common-law doctrine is the same without regard to whether a charitable gift or trust is at stake, Rawson's argument that the trial court erred in relying on *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, which involved a trust, is without merit.[9]

Accordingly, we affirm the trial court's order sustaining the Foundation's and the Church's preliminary objections and dis-

---

ana, New York and Tennessee. Even if we deemed these cases persuasive, they are inapposite because each involves a donation accompanied by *contemporaneous*—not subsequent—conditions. *See L.B. Research & Education Foundation v. The UCLA Foundation,* 130 Cal.App.4th 171, 29 Cal.Rptr.3d 710 (2005) (holding that a donor of a conditional gift had standing to enforce the conditions when they were evidenced in the agreement establishing the gift); *Howard v. Administrators of Tulane Educational Fund,* 986 So.2d 47, 58 (La.2008) (explaining that under Article 1758 of the Louisiana Civil Code, LSA–C.C. Art. 1758, which derives from the French Civil Code, a donor and its heirs may enforce the conditions of a gift set forth in the instrument creating the gift); *Smithers v. St. Luke's–Roosevelt Hospital Center,* 281 A.D.2d 127, 723 N.Y.S.2d 426 (N.Y.App,Div.2001) (finding that a donor's wife had standing to enforce the conditions of her late-husband's gift which were established in the document creating the gift); *Tennessee Division of the United Daughters of the Confederacy v. Vanderbilt University,* 174 S.W.3d 98 (Tenn.Ct.App.2005) (same).

Similarly, Rawson's focus on our case law regarding engagement rings is misplaced. It is well established that an engagement ring is a gift impliedly conditioned upon the occurrence of a marriage. *See, e.g., Lindh v. Surman,* 560 Pa. 1, 742 A.2d 643, 644 (1999). In such cases, the law recognizes the existence of the condition without the need for the donor to establish it. Such is not the case where a monetary gift is made to a non-profit corporation.

8. We note that Section 5793(a) of the Nonprofit Corporation Act, which was amended in 2013, expands standing to "any person aggrieved by any corporate action" to file an application with the court for it to "hear and determine the validity of the corporate action." 15 Pa.C.S. § 5793(a). However, Rawson states that "the standing requirements of that law are irrelevant to this case," and he does not argue that he has standing under this provision. (Reply Br. for Appellant to Br. for Appellee Commonwealth of Pennsylvania at 2; Reply Br. for Appellant to Br. for Appellee Church of Good Shepherd, Rosemont at 7–8.) He probably considered the provision irrelevant because it was amended in 2013 after the trial court's decision. In any event, because Rawson has failed to establish that he is "aggrieved," standing is not conferred under this provision. We leave for another day the issue of whether a donor who imposes contemporaneous conditions on a charitable gift has standing to enforce the conditions.

9. We further note that *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, decided on December 28, 2006, was not superseded by the Act, which was enacted on July 7, 2006, and became effective on November 6, 2006, before the decision was rendered. *See generally* Sections 7701–7799.3 of the Act, 20 Pa.C.S. §§ 7701–7799.3.

missing Rawson's amended petition with prejudice.

Judge LEAVITT concurs in the result only.

### ORDER

AND NOW, this 5th day of November, 2014, the order of the Court of Common Pleas of Montgomery County's Orphans' Court Division dated August 27, 2013, in the above-captioned matter, is affirmed.